Chris A. Tingirides

CIM

FULL NAME

COMMITTED NAME (if different)

CIM-C-4-207U P.O. Box 500
FULL ADDRESS INCLUDING NAME OF INSTITUTION

Chino, Ca 91708

V-76154
PRISON NUMBER (if applicable)

FILED
CLERK, U.S. DISTRICT COURT

10/2/2018

CENTRAL DISTRICT OF CALIFORNIA
BY:          DD          DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

California Department
of Corrections and
Rehabilitation

PLAINTIFF,

v.

Dean Borders Warden
Dr. Han Duong
Does 1-100

DEFENDANT(S).

CASE NUMBER **ED CV 18-2098-AG(MAA)**

*To be supplied by the Clerk*

Chris A. Tingirides

**CIVIL RIGHTS COMPLAINT
PURSUANT TO** *(Check one)*

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes  ☒No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

   *N/A*

a.  Parties to this previous lawsuit:
Plaintiff _____ *N/A* _____

Defendants _____ *N/A* _____

b.  Court _____ *N/A* _____

c.  Docket or case number _____ *N/A* _____

d.  Name of judge to whom case was assigned _____ *N/A* _____

e.  Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _____ *N/A* _____

f.  Issues raised: _____ *N/A* _____

g.  Approximate date of filing lawsuit: _____ *N/A* _____

h.  Approximate date of disposition _____ *N/A* _____

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.  Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2.  Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

If your answer is no, explain why not _____
_____
_____

3.  Is the grievance procedure completed? ☒ Yes   ☐ No

If your answer is no, explain why not _____
_____

4.  Please attach copies of papers related to the grievance procedure.

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff _____ *Chris A. Tingirides* _____
(print plaintiff's name)

who presently resides at _____ *CIM-C-4-207U  P.O. Box 500 Chino, Ca 91708* _____,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
*California Institution for Men, Chino, California*
(institution/city where violation occurred)

on (date or dates) <u>6-3-17 To DATE OF FILING Compl.</u> . _____ .
         (Claim I)                    (Claim II)                    (Claim III)

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant <u>California Department of Corrections</u> _____ resides or works at
            (full name of first defendant)

   <u>CIM, P.O. Box 500 Chino, Ca 91708</u>
   (full address of first defendant)

   _____
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☑ individual   ☐ official capacity.

   Explain how this defendant was acting under color of law:
   See attached
   _____

2. Defendant <u>Warden Dean Borders</u> _____ resides or works at
            (full name of first defendant)

   <u>CIM P.O. Box 500 Chino, Ca 91708</u>
   (full address of first defendant)

   <u>Warden California Institution for Men</u>
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

   Explain how this defendant was acting under color of law:
   See attached
   _____

3. Defendant <u>Han Duong</u> _____ resides or works at
            (full name of first defendant)

   <u>CIM P.O. Box 500 Chino, Ca 91708</u>
   (full address of first defendant)
   <u>Doctor, California Institution for Men</u>
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

   Explain how this defendant was acting under color of law:
   See Attached
   _____

---

4.  Defendant _____ resides or works at
    _____
    (full name of first defendant)

    _____
    (full address of first defendant)

    _____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

5.  Defendant _____ resides or works at

    (full name of first defendant)

    _____
    (full address of first defendant)

    _____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

## D. CLAIMS*

**CLAIM I**

The following civil right has been violated:

*See Attached*

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

*See Attached*

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

*See Attached*

_____

9-19-18
*(Date)*

*(Signature of Plaintiff)*

**CIVIL RIGHTS COMPLAINT**

# I

## INTRODUCTION

The plaintiff brings this action under the Americans with Disabilities Act alleging that the Defendants Dr. Han Duong, Warden Dean Borders, and the California Department of Corrections and Rehabilitation, Violated Plaintiff's Constitutional Rights to Adequate medical care by requiring plaintiff to be housed in an upper bunk in direct conflict with the safety instructions of plaintiff's C-PAP Therapy Device. Plaintiff has exhausted his administrative remedies without a safe resolution.

# II

## STATEMENT OF FACTS

ON 07-11-12, Plaintiff was diagnosed with Obstructive Sleep Apnea (OSA) requiring plaintiff to use a C-PAP (Constant Positive Air Pressure) breathing assistance therapy device. Plaintiff cannot safely use this device from a top bunk assignment, in keeping with the operational manual's instructions for safe operation of the breathing assistance device (C-PAP) (See Exhibit 1).

According to the operations manual for C-PAP users that plaintiff was issued by defendants, in the section titled: "Warnings" states:

"A warning indicates the possibility of injury to the user or the operator: For safe operation when using a humidifier, the humidifier must always be positioned below the breathing circuit connection at the mask. The humidifier must be level for proper operation. Do not pull or stretch the tubing. This could result in circuit leaks (Respironics Inc., 2016, pp. 1-2)"

1

Furthermore, According to the operations manual for C-PAP users, that plaintiff was issued by defendants, in the section titled: "Caution" states:

> "Caution: A caution indicates the possibility of damage to the device: Make sure the filter area on the side of the device is not blocked by bedding, curtains, or other items. Air must flow freely around the device for the system to work properly. Do not place the device in or on any container that can collect or hold water, (Respironics Inc., 2016, p. 2)"

In a separate manual that was issued to plaintiff by defendants, for the use of the Humidifier the warnings include:

> "Use the humidifier only for its intended use as described in this manual. Use only masks and connectors recommended by Phillips Respironics, The humidifier must always be positioned below the breathing circuit connection at the mask. The humidifier must be level for proper operation. When installing the water tank, do not allow any water to spill into the humidifier or therapy device. Empty and clean the water tank daily to prevent mold and bacteria growth. Do not use any accessories, detachable parts, and materials not recommended by Philips Respironics. Incompatible parts or accessories can result in degraded performance."

An additional warning in the "cautions" section of the humidifier owner's manual is the following:

> "Do not place the device in or on any container that can collect or hold water.

2

Take precautions to protect furniture from water damage. Do not fill the water tank above the maximum fill line. If the water tank is overfilled, water may leak into the therapy device, humidifier, or onto your furniture. Damage to the humidifier or therapy device may occur. Use only room temperature **distilled** water in the tank. Do not put any chemicals or additives into the water. Possible airway irritation or damage to the water tank may result. Do not attempt to fill the water tank while it is still inside the humidifier. Use a mild liquid dishwashing detergent only for either hand washing or when using a dishwasher. (Phillips Respironics Inc., 2016, p. 1)"

Plaintiff was diagnosed with Obstructive Sleep Apnea. Plaintiff was issued a C-PAP breathing assistance device on 07-11-12, with the pressure output of the C-PAP adjusted to 8cm (See Exhibit **2**

On 11-09-12, Plaintiff was seen for a chronic care appointment that noted, "due to plaintiff's treatment with the C-PAP he is a-symptomatic". Plaintiff was successfully treated for the next three years while he was assigned to a lower bunk, by order of custody staff, due to safety and liability concerns (manufacturer warnings of the C-Pap device), where he safely and successfully used his C-PAP breathing assistance device.

Plaintiff was assigned to a lower bunk (CIM-A-LH-175L). Plaintiff was advised by building custody staff that he needed to have a lower bunk **"chrono"** for his C-PAP device. Lower bunk chronos for medical devices are normally issued by medical staff. Plaintiff immediately filed a medical appeal (CDCR-602) to resolve the issue so that he could remain assigned to the bottom bunk where he could safely and properly use his C-PAP machine.

3

On 04-17-13 plaintiff was interviewed by Dr. Pollick regarding plaintiff's administrative

appeal. Dr. Pollick documented his feelings on the issue in his 'progress notes' as follows:

"I explained to the patient that these manuals are written for lay people. Medical

professionals can make decisions based on what they know about the disease and

the machines in question (in this case the C-PAP machine) and complications that

can arise with them. The main concern is if the two were straight that the machine

was so far above his head that the condensation would just run right into the

mask, this would cause him disturbed sleep. It certainly would not cause him to

drown or inhale any water. As soon as the water hit his nose it would wake him

up and this would be a problem but not dangerous. As far as the machine being

just 6 to 8 inches above his head, the tube from the machine is approximately 6

feet long. The bend in the tube that is created by the tube dropping down and then

coming back to be fixed at the patients head will prevent any condensation from

getting into the mask. The amount of condensation that is made is minimal,

measured in mL'; possibly 4-5 mL per night." The tube can be dumped at the end

of the day if there is any kind of condensation inside."( See Exhibit 3).

Although Dr. Pollick denied the appeal, custody staff informed plaintiff that, due to the fact

plaintiff was documented as having been issued a C-PAP, which was listed in the DECS,

plaintiff would be housed on bottom bunk and that a lower bunk chrono would be unnecessary as

liability and safety issues required lower bunk assignment for all C-PAP users. This allowed the

C-Pap device to remain at a lower level than the patient as required by the Manufacturer.

On 05-30-13, custody staff moved plaintiff to an upper bunk. Plaintiff immediately spoke

to a Sgt Bailey who stated:

4

"They had just had a meeting on this subject and due to liability and safety concerns C-PAP users must be on bottom bunks";

Sgt Bailey reassigned plaintiff back to a lower bunk the very same day. Plaintiffs housing changes on 05-30-13 were from LH-175L to 175U, then from 175Up back to175L.

From 05-30-13 through 1-13-16, Plaintiff was assigned to a lower bunk because of his C-PAP therapy device.

On 01-14-16, Plaintiff was transferred to Facility C and was initially housed on an upper bunk. However, after plaintiff reported to the building officer that he had been issued a C-PAP device and could not safely operate the C-PAP device while being assigned to an upper bunk, the housing unit officer made some calls and then moved plaintiff to a lower bunk, (from C-1-110U to C-1-107L). Plaintiff was again moved to another lower bunk a few months later. (C-1-133L).

On 12-23-16 plaintiff was again moved to an upper bunk assignment from C-1-133Low to C-1-204Up, and again reassigned to a lower bunk (C-1-223Low) once staff was advised that plaintiff was issued a C-PAP. Plaintiff was again told to get a lower bunk "chrono" or faced being put on a top bunk.

On 12-27-16, Plaintiff was seen by nursing staff who stated that "That this is a custody issue and as long plaintiff has electricity, the rest is up to custody and custody would have to evaluate the situation." (See Exhibit 4

On 12-28-16 plaintiff filed an inmate appeal for a lower bunk chrono. Defendant advised plaintiff that "as long as you can plug the machine in that is all that we have to provide."

On 12-30-16, Custody staff responded to an inmate request for interview (form 22) stating that "only medical can authorize a lower bunk." (See Exhibit 5

5

On 12-31-16, Plaintiff was moved from C-1-223Low to C-1-133Low then back to C-1-223Low.

On 01-04-17, Plaintiff was seen by nursing staff. Plaintiff asked if custody had reevaluated the C-PAP lower bunk situation. The Nurse told plaintiff "as long as it is in the DECS that is all that medical can do, it is a custody issue."

On 01-17-17, Plaintiff was seen by Defendant Duong who incorrectly informed plaintiff "custody would supply him with a longer hose or a table to put the device on". Defendant Duong knew, or should have known that Custody does not issue these items.

On 06-03-17, after there had been a change in custody staff, Plaintiff was moved to an upper bunk. Custody staff responded on a Request for interview (form 22) to plaintiff:

> "Per the Sgt. On duty your C-PAP machine is not a consideration for a
>
> lower bunk (2w6/4/17)."

On 06-14-17, Plaintiff was awoken by custody staff, who was conducting a security check of all cells in the building. Plaintiff was startled and sat up rapidly, pulling his C-PAP machine off the top of the top locker. The C-PAP landed on the floor and was damaged. At the time, that plaintiff was issued the C-PAP machine; inmates were required to bear the cost of the device.

On 06-28-17, Plaintiff's C-PAP machine fell off of the top locker and broke the access door off of the device and bent the on off switch. When plaintiff tried to use the device an error code came up. (See Exhibit 6)

On 08-09-17 Plaintiff was seen by Defendant for the appeal that plaintiff had filed for the lower bunk chrono (Appeal # CIM-C-17-00085. Defendant stated in her notes:

6

"The patient is explained that using C-PAP machine does not qualify for a lower bunk. Because he was accommodated with a long hose, so that he can put the C-PAP machine at a lower level."

However, Plaintiff was never issued a different hose, and in fact, on 01-17-17 the respiratory therapist informed plaintiff that a longer hose would not work due to the machine being calibrated for the specified diameter and length of hose that is made for the machine.

The top bunk is approximately 55" (4 ft 7 in) from the floor. While a metal writing table is located near the double bunks, the top of the table is only 26" from the floor. Not only does the metal writing table provide almost no assistance in climbing onto the top bunk, due to the distance between the table and the top bunk, and because the table is used for writing by both inmates assigned to the cell, any access to the top bunk by use of the table is inherently dangerous. The top of the Locker is approximately 80" (6ft. 8 in) from the floor. This is a difference of 2 feet 1 inches from the top of the locker to the surface of the bed, which is clearly above the sleeping position of the plaintiff. The plaintiff has to have access to the C-PAP controls throughout the night to use various functions including the the ramp function.

On 09-10-17, Plaintiff's C-PAP device fell off of the top locker and ripped the hose at the connection rendering the hose inoperative. Plaintiff turned in a 7362 medical request and was seen on 09-12-17 Nursing staff  attempted to tape the hose joint back together, and notified the respiratory therapist. (See Exhibit 7, 7A)

On 09-15-17, Plaintiff submitted another medical request form explaining that the tape did not hold on the hose and that plaintiff Apnea Hypoxia Index, (AHI) had risen from 3.2 to 9.6,

which indicates that plaintiff's breathing was severely interrupted and that his oxygen level was

substantially decreased, which is exactly what the C-PAP is designed to treat. 9.6 is identified as

a dangerous level. (See Exhibit 8)

On 09-18-17 Plaintiff was seen by the respiratory therapist and was issued a new hose

and mask.

On 10-08-17, Plaintiff submitted a medical request form (5339172) which stated: Since

the weather has cooled off, due to Plaintiff being housed on the top bunk he can only use his C-

PAP placed above his sleeping position. Now at night the water is condensing in the hose and

gurgling and running into his face, which is waking him up, and forcing him to drain the hose

back into the humidifier tank, this is interfering with his sleep. (See Exhibit 9)

On 10-17-17, Plaintiff was seen by nursing staff. Plaintiff explained to the nurse that

since the weather has cooled off, due to his being housed on the top bunk his C-PAP can only be

placed above his sleeping position. Since the weather has cooled off at night, more water is

condensing in the hose and gurgling and running into plaintiff's face which is waking him up,

causing plaintiff to choke on water accumulating in the mask, and interfering with his sleep.

Nursing staff told plaintiff that she had called and left a message for the Senior R.N. and would

get back to him regarding this situation.

On 10-31-17, Plaintiff submitted medical request form (5339165) explaining that with the

cold weather, the condensing water from his C-PAP device is so bad that his pillow is now

getting wet, the hose is filling with water, plaintiff is choking on the water, he has to drain the

hose to allow the water to go back into the humidifier tank before he goes back to sleep, and that

it had been two weeks since nursing staff had told plaintiff she would get back to him. Plaintiff

further complained that He is not sleeping well, and cannot use his humidifier without getting

condensation in the hose, on his face (rain out), and choking on the water that was accumulating

in the full face mask. (See Exhibit *10*)

On 11-02-17 Plaintiff was seen by nursing staff and explained that he was making sure to

establish a paper trail for his request for lower bunk chrono due to his Obstructive Sleep Apnea,

he further explained that Custody told him it was a medical issue and that medical told him it

was a custody issue and he planned to litigate the issue. Nursing staff told plaintiff that lower

bunks were for people that could not get up onto a lower bunk, and not for C-PAP users. (See

On 12-04-17 Plaintiff submitted a medical request (5339168) and was seen by nursing

staff and explained that he was now taking naps in the daytime due to disturbed sleep from rain

out as a result of his being improperly housed on an upper bunk with his C-PAP device. (See

Exhibit *11*)

On 12-22-17 Plaintiff was seen by respiratory therapist and complained that he was

suffering from disturbed sleep due to rain out, respiratory therapist RCP Navarro advised

plaintiff that he needed to have the C-PAP machine lower than his sleeping position and he

should be placed on a lower bunk.

The C-PAP therapy device consists of two different sections, the humidifier, and the C-

PAP; the C-PAP cannot get water spilled into it. The C-PAP unit's humidifier contains water and

must be taken down daily for cleaning. Once cleaned and refilled with water it must then be

placed back on top of the locker without spilling any of the water. The owner's manual is very

clear regarding water spilling into the rest of the unit and daily cleaning.

"The humidifier must be level for proper operation. When installing the water tank, do not allow any water to spill into the humidifier or therapy device. Empty and clean the water tank daily to prevent mold and bacteria growth."

The top of the locker is 6ft 8 inches from the floor (plaintiff is 58 years old and only 5ft 9 inches tall) it is difficult for the plaintiff to reach up on top of the locker while holding the unit level, plug the electrical cord in, and reattach the hose without spilling water into the unit.

Plaintiff has filed two separate inmate appeals regarding plaintiff needing to have the C-PAP machine lower than his sleeping level. One appeal was directed to custody, Appeal log # CIM-C-17-00085, and another appeal log # CIM-HC-17032282. Both appeals have been submitted to, and denied through the third level.

Additionally plaintiff filed three 1824 reasonable request for accommodations Log # CIM-C-1-00151, CIM-C-17-00083 and CIM-C-16-02966 all three was denied. Evidence of a granted appeal Log # VSP-HC-15003668, by patient M. Wilson D-52572 from Valley State prison confirms that inmates that are prescribed C-PAP machines are assigned to housing that allows proper use of the medical appliance.

Plaintiff asserts that this new policy of denying C-PAP users their right to use this lifesaving breathing assistance device is yet another symptom of overcrowding, which it is not coincidental that this new policy enforcement coincides with CIM taking back medical oversight from the receiver.

Plaintiff asserts that Defendants statements that Plaintiff is not disabled because he is being treated is fundamentally flawed. Plaintiff further contends that not only does Obstructive Sleep Apnea qualify as a disability, but also, plaintiff's treatment is not adequate to treat sleep Apnea unless he can properly and safely use, clean and maintain his breathing assistance device.

10

Plaintiff alleges that denying plaintiff a lower bunk chrono denies him the major life activities of adequate undisturbed sleep, breathing and oxygen supply to the blood stream, and that he is being negatively affected and irreparably harmed by the actions of defendants.

Plaintiff further claims that Defendant, Duong, Defendant Warden Borders, and The California Department of Corrections and Rehabilitation (CDCR), are acting with deliberate indifference by deliberately denying plaintiff's request for a lower bunk chrono where plaintiff can safely operate his assistive device (C-Pap) according to the specifications of the manufacturer, by deliberately failing to investigate plaintiff's housing situation, and their deliberate failure to adhere to the manufacturer's warnings regarding the use of plaintiff's C-Pap device, thereby failing to provide Plaintiff adequate medical care and violating the Americans with Disabilities Act.

Wherefore plaintiff seeks injunctive relief requiring defendant:

1.  to provide adequate medical care so that he may enjoy the benefits of his C-PAP device without being further harmed by the actions of the defendant.

2.  Compensatory damages in the amount of 20,000,

3.  Punitive damages in the amount of 30,000.

4.  Trial by jury on all matters so triable, and

5.  Any and all other relief as the court deems just and proper.

11

 **CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES



**Date:** FEB 2 3 2018

**To:**   TINGIRIDES, CHRIS (V76154)
California Institution for Men
P.O. Box 128
Chino, CA 91710

**From:**   California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :**   CIM HC 17032282

This appeal was reviewed by Health Care Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

## DIRECTOR'S LEVEL DECISION:

Appeal is denied. This decision exhausts your administrative remedies.

## APPEAL REQUESTS:

You are requesting:
- Lower bunk chrono accommodation for use of the continuous positive airway pressure (CPAP) machine.
- To be classified under American's with Disabilities Act (ADA) as intermittent wheelchair user (DPO).

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal file and documents obtained from your health record were reviewed by licensed clinical staff. These records indicate:
- You are enrolled in the Chronic Care Program (CCP), where your medical conditions and medication needs are closely monitored. Progress notes indicate there is a plan of care in place and the primary care provider has discussed the plan of care with you.
- On December 15, 2017, you were seen and evaluated by the PCP; notes indicate you request a lower bunk chrono due to the use of a CPAP machine; it was noted you have been accommodated with a long hose, so that you can put the CPAP machine at a lower level, further it was noted, the use of a CPAP machine is not a criteria for a lower bunk chrono. There is no medical indication determined by the PCP for an ADA designation related to CPAP use; you were provided with CPAP education material and tips for using the machine.
- On January 26, 2018, you were seen by the Respiratory Therapist (RT) for CPAP maintenance; notes indicate the RT checked and cleaned the CPAP machine, including the mask, hose, and humidifier; the RT replaced all filters and provided you with additional filters; it was noted you are tolerating the CPAP machine well.
- You have a CCP pending scheduling. You will be notified when your appointment nears. Your medical condition will continue to be monitored with care provided as determined medically indicated by the primary care provider. If you have additional health care needs, you are advised to utilize the CDC 7362, Health Care Services Request Form, process to access health care services in accordance with California Correctional Health Care Services policy.

C.TINGIRIDES, V76154
CIM HC 17032282
Page 2 of 2

While you may not agree with the medical decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your medical needs.

While the health care appeals process is an administrative means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers.  You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care.  However, California law directs your health care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with appropriate policies and procedures.  Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

**RULES AND REGULATIONS:**

The rules governing these issues are:  California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures; and the Department Operations Manual.

**ORDER:**

No changes or modifications are required by the institution.

S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## THIRD LEVEL APPEAL DECISION

Date:  **MAY 2 5 2017**

In re:  Chris Tingirides, V76154
California Institution for Men
P.O. Box 128
Chino, CA  91708

TLR Case No.: 1702837          Local Log No.:  CIM-17-00085

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Knight, Captain.  All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:**  It is the appellant's position that the California Institution for Men (CIM) is subjecting him to inappropriate living conditions as he uses a Continuous Positive Airway Pressure (CPAP) machine and is currently housed on an upper bunk.  The appellant asserts that pursuant to CIM Operational Procedure (OP) 4.42.1, inmates are required to use durable medical equipment as prescribed and will be held financially responsible for any damage or misuse.  The appellant asserts for three years he was assigned to a lower bunk assignment with his CPAP machine.  The appellant alleges there is no safe way to secure his C-PAP device below his level and by placing the device above his sleeping level the water accumulates in the hose and runs into the airway causing the appellant to either drown or pull his mask off.  The appellant states that pulling on the device may cause the device to fall on the person below him and the water is heated to 149 degrees which would burn anyone the device landed on.  The appellant requests to be housed in a manner that would allow him to safely use his CPAP machine; to receive a reasonable accommodation based upon his sleep apnea; and to be housed in a lower bunk.

**II   SECOND LEVEL'S DECISION:**  The First Level of Review noted that on January 13, 2017, the reviewer spoke to Facility C Dr. H. Duong.  She informed the reviewer that the appellant did not require a lower bunk chrono for his CPAP equipment.  She informed the reviewer that the appellant's CPAP machine must be placed on a flat surface below his head and by using his state issued lockers there should be no problems or issues.  The reviewer also spoke to Registered Nurse Payne on the same day, and she reiterated the same information that having a CPAP machine does not constitute a lower bunk chrono.

The appellant contends that he is not in a lower bunk because of overcrowding at CIM.  The Second Level of Review (SLR) notes that this allegation is incorrect.  Inmates are housed based upon housing restrictions and the appellant has no housing restrictions; therefore, he is eligible to be housed in any available cell.  The appellant asserts he does not have a safe place to put his CPAP which is lower in elevation than his sleeping area.  The SLR found this to be incorrect as all CIM Facility C cells have access to power and are provided with a locker, which sits next to the bed.  The locker provides a stable and level location for the CPAP to rest while in use and is lower in height than that of an upper bunk, yet high enough for the hose of the CPAP to reach the user, thus allowing condensation and moisture to return back in to the CPAP; as required in Chapters 3 (CIM OP) "Where to Place the Device" and in Chapter 6 of the user manual the appellant attached to his CDC Form 602, Inmate/Parolee Appeal Form.

The SLR found no merit to support the appellant's contention that the water within the CPAP machine would burn a person if the water was to make skin contact.  The SLR noted that Correctional Sergeant (Sgt.) Lewis inspected the appellant's cell and confirmed the cell had a locker and access to power, which would allow the appellant to be housed in an upper bunk.  During the cell inspection, Sgt. Lewis noticed the appellant is currently in a lower bunk.  The appellant's appeal was partially granted at the SLR.  The appellant's request to be given a "Lower Bunk" chrono falls outside of the scope of the appeals process and cannot be granted or denied in this appeal.  However, the appellant may file a CDC Form 7362, Health Care Services Request Form so appropriate medical personnel may assist him.

CHRIS TINGIRIDES, V76154
CASE NO. 1702837
PAGE 2

**III   THIRD LEVEL DECISION:**   Appeal is denied.

**A.   FINDINGS:**   Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and properly evaluated by administrative staff at CIM.   Despite the appellant's dissatisfaction, this review finds no evidence of a violation of existing policy or regulation by the institution based upon the arguments and evidence presented.   Pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.1(a), any inmate may appeal any departmental action, condition, or policy which they can demonstrate as having an adverse material effect upon their welfare. The examiner finds that the appellant has failed to demonstrate that staff acted inappropriately or that he has been housed incorrectly.   The examiner finds that the appellant has failed to support his position. Therefore, relief at Third Level of Review shall not be provided.

The appellant has added new issues and requests to his appeal.   The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

**B.   BASIS FOR THE DECISION:**
Armstrong Remedial Plan: ARPII.F, ARPIV.F, ARPIV.F.1, ARPIV.F.3
CCR: 3000, 3000.5, 3001, 3002, 3004, 3005, 3060, 3084, 3084.2, 3084.5, 3084.7, 3269, 3269.1, 3270, 3271, 3272, 3350, 3375, 3380, 3391

**C.   ORDER:**   No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.


J. KNIGHT, Appeals Examiner
Office of Appeals

M. VOONG, Chief
Office of Appeals

cc:      Warden, CIM
           Appeals Coordinator, CIM

CIM - E.R.
2017 FEB 7 AM 28

CIM - E.R.
2017 JAN 11 AM 11 20

EXHIBIT 1

## 3.2 Where to Place the Device

Place the device on a firm, flat surface somewhere within easy reach of where you will use it at a level lower than your sleeping position. Make sure the filter area on the back of the device is not blocked by bedding, curtains, or other items. Air must flow freely around the device for the system to work properly. Make sure the device is away from any heating or cooling equipment (e.g., forced air vents, radiators, air conditioners).

CAUTION: Do not place the device directly onto carpet, fabric, or other flammable materials.

CAUTION: Do not place the device in or on any container that can collect or hold water.

CAUTION: Make sure that the drain holes on the bottom of the device are not blocked.

CAUTION: Take precautions to protect furniture from water damage.

CAUTION: Do not turn the device on without the water chamber installed.

## 3.3 Connecting the Breathing Circuit

To use the system, you will need the following accessories in order to assemble the recommended circuit:

- Respironics interface (e.g, nasal mask or full face mask) with integrated exhalation port (or Respironics interface with a separate exhalation device such as the Whisper Swivel® II)
- Respironics 6 ft. flexible tubing
- Respironics headgear (for the patient interface)

WARNING: If the device is used by multiple persons (e.g., rental devices), a low-resistance, main flow bacteria filter should be installed in-line between the device and the circuit tubing to prevent contamination.

To connect your breathing circuit to the device, complete the following steps:

1. Connect the flexible tubing to the air outlet on the top of the device, as shown in Figure 3–2.



Flexible Tubing

Bacterial Filter (optional)

Figure 3–2 Connecting the Flexible Tubing

NOTE: If required, connect a bacteria filter to the device air outlet, and then connect the flexible tubing to the outlet of the bacteria filter.

NOTE: Do not use the heated humidifier fe... be in the humidifier chamber when

NOTE: The bacteria filter is recommended... from the transference of a virus o...

2. Connect the tubing to the mask:
   a. If you are using a mask with a built-in... flexible tubing, as shown in Figure 3-...
   b. If you are using a mask with a separate... flexible tubing to the exhalation dev... device so that the vented air is blown... to the exhalation device.

Figure 3–3 Connecting A...

WARNING: The exhalation device (e.g... an integrated exhalation p... Do not block or seal the...

WARNING: If you are using a full face m... nose), the mask must be e... ensure that the entrainme...

3. Attach the headgear to the mask. See...

Figure 3–4 Connecting...

USER MANUAL

STATE OF CALIFORNIA                                                                DEPARTMENT OF CORRECTIONS

## COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

None

| | | |
|---|---|---|
| 1. Barrier Free/Wheelchair Access | P / T \_\_\_\_\_ | 4. Bottom Bunk    P / T \_\_\_\_\_ |
| 2. Ground Floor Cell | P / T \_\_\_\_\_ | 5. Single Cell (See 128-C date: \_\_\_\_\_ )    P / T \_\_\_\_\_ |
| 3. Continuous Powered Generator | P / T \_\_\_\_\_ | 6. Permanent OHU / CTC (circle one)    P / T \_\_\_\_\_ |
| | | 7. Other _____    P / T \_\_\_\_\_ |

### B. MEDICAL EQUIPMENT/SUPPLIES

None

| | | |
|---|---|---|
| 8. Limb Prosthesis | P / T \_\_\_\_\_ | 16. Wheelchair: (type) \_\_\_\_\_    P / T \_\_\_\_\_ |
| 9. Brace | P / T \_\_\_\_\_ | 17. Contact Lens(es) & Supplies    P / T \_\_\_\_\_ |
| 10. Crutches | P / T \_\_\_\_\_ | 18. Hearing Aid    P / T \_\_\_\_\_ |
| 11. Cane: (type) \_\_\_\_\_ | P / T \_\_\_\_\_ | 19. Special Garment: |
| 12. Walker | P / T \_\_\_\_\_ | (specify)    P / T \_\_\_\_\_ |
| 13. Dressing/Catheter/Colostomy Supplies | P / T \_\_\_\_\_ | 20. Rx. Glasses: \_\_\_\_\_    P / T \_\_\_\_\_ |
| 14. Shoe: (specify) \_\_\_\_\_ | P / T \_\_\_\_\_ | 21. Cotton Bedding    P / T \_\_\_\_\_ |
| 15. Dialysis Peritoneal | P / T \_\_\_\_\_ | 22. Extra Mattress    P / T \_\_\_\_\_ |
| | | 23. Other  *CPAP machine*    P / T \_\_\_\_\_ |

### C. OTHER

None

| | | |
|---|---|---|
| 24. Attendant to assist with meal access and other movement inside the institution. | P / T \_\_\_\_\_ | 26. Therapeutic Diet: (specify) \_\_\_\_\_    P / T \_\_\_\_\_ |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | | 27. Communication Assistance    P / T \_\_\_\_\_ |
| | | 28. Transport Vehicle with Lift    P / T \_\_\_\_\_ |
| | | 29. Short Beard    P / T \_\_\_\_\_ |
| 25. Wheelchair Accessible Table | P / T \_\_\_\_\_ | 30. Other \_\_\_\_\_    P / T \_\_\_\_\_ |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?    ☐ Yes    ☒ No

If yes, specify: \_\_\_\_\_

| INSTITUTION  *CM* | COMPLETED BY (PRINT NAME)  *TM* | TITLE  *M.* |
|---|---|---|
| SIGNATURE | DATE  *7-11-12* | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE | DATE  *7/12* | *Tingridee, e* |
| APPROVED (list the number of items approved)  *23* | | *V76154.* |
| DENIED (list the number of items denied) | | *(or 25-59.* |

COMPREHENSIVE ACCOMMODATION
CHRONO    *EXHIBIT 2*

CDC 7410 (08/04)

Distribution:
Original - Unit Health Record    Canary - Central File    Pink - Correctional Counselor    Gold - Inmate

California Correctional Health Care Services

CALIFORNIA INSTITUTION FOR MEN

## MEDICAL PROGRESS NOTE

| NAME: TINGIRIDES, CHRIS | CDCR#: V76154 | DATE OF SERVICE: 04/17/2013 |
|---|---|---|
| DATE OF BIRTH: 10/25/1959 | HOUSING: A LH 1000175L | PAROLE DATE: |

TIME: 1140 hours.

Test of Adult Basic Education (TABE) score is 12.9.

REASON FOR VISIT: The patient is here to discuss a 602 Appeal that he had submitted.

SUBJECTIVE: The patient has obstructive sleep apnea syndrome and uses a CPAP machine at night. Currently he is on a bottom bunk. It has been determined that patients on CPAP do not need to be on a bottom bunk and I did go over to his housing. The patient was not there at that time but I looked at the setup. The patient is currently on the lower bunk and there is no one on the upper bunk. He has his CPAP machine in the open locker which is perpendicular to the head of the bed. If the patient were moved to the top bunk, there would be an approximately 6 to 8 inch difference between the outlet of the two from the CPAP machine and the patient's head. Both the patient and his sister who had sent information into us here at California Institute for Men (CIM) were concerned about the unit being above his head as it says in the user manual that this should not be the case. I explained to the patient that these manuals are written for lay people. Medical professionals can make decisions based on what they know about the disease and the machines in question (in this case the CPAP machine) and complications that can arise with them. The main concern is if the two were straight that the machine was so far above his head that the condensation would just run right into the mask, this would cause him disturbed sleep. It certainly would not cause him to drown or inhale any water. As soon as the water hit his nose it would wake him up and this would be a problem but not dangerous. As far as the machine being just 6 to 8 inches above his head, the tube from the machine is approximately 6 feet long. The bend in the tube that is created by the tube dropping down and then coming back to be fixed at the patient's head will prevent any condensation from getting into the mask. The amount of condensation that is made is minimal, measured in mL's; possibly 4-5 mL per night. The tube can be dumped at the end of the day if there is any kind of condensation inside. I have spoken with the respiratory therapist. She informed me that there are patients over in Elm Hall who has their units approximately 2 feet above their head and none of them have had any complaints regarding poor sleep or being woken up gagging because of water that had gotten into their nose. The patient also raised the concern that the tube is hanging over the bed. He is concerned his cellmate could get up in the middle of the night and get tangled in the hose. Certainly this could be ameliorated by having one cellmate sleeping with his head toward one direction and the one in the other direction so if the person on the lower bunk got up they would not get snagging on any tube. It is also unlikely because it is not long enough that it hangs all the way to the floor. That was the other option, putting the unit on the floor. My concern was there was not enough space to _____ but I could be incorrect about this and this is something that we may want to pursue in the future should the position on top of the locker not be safe. The area on top of the locker is flat. I would be stable for the machine.

ASSESSMENT/PLAN: I explained to the patient that I am not going to grant the 602 Appeal. He can be put in an upper bunk if it is needed. The patient was able to understand what we discussed and he repeated back to me in his own words what we talked about.

EDUCATION: I reviewed the above treatment plan with the patient who verbalized in his own words that he understood the treatment plan.

EFFECTIVE COMMUNICATION: TABE 12.9. No other barriers to effective communication were noted. The patient's questions were answered and effective communication was achieved.

FOLLOWUP: The patient will follow up as previously scheduled for his next chronic care followup visit. He will be seen sooner if clinically indicated or if he feels that he needs to be seen sooner.

DISABILITY CODE:
() TABE score less than 4.0
() DPH () DPV () LD
() DPS () DNH

ACCOMMODATION:
() Additional time
() Equipment () SLI
() Louder () Slower

EFFECTIVE COMMUNICATION:
(x) Patient-inmate asked questions.
(x) Patient-inmate summed information
PLEASE CHECK ONE

DICTATED BY Christopher Pollick, MD
TINGIRIDES CHRIS

*EXHIBIT 3*

Confidential Saved 2018-01-02T19:35:53Z
V76154



5750545

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:    MEDICAL ☑    MENTAL HEALTH ☐    DENTAL ☐    MEDICATION REFILL ☐

NAME  *Tingirides*    CDC NUMBER  V76154    HOUSING  C1-223 L

PATIENT SIGNATURE    DATE

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)  I have a C-PAP machine and I don't have a lower bunk chrono. The c/o told me I will be moved if I don't get a lower bunk chrono

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

Date / Time Received: 12/27/16    0700    Received by: Carlsen RN 314

Date / Time Reviewed by RN:    Reviewed by: Carlsen RN 314

S: "I need a lower bunk chrono"    Pain Scale:  1  2  3  4  5  6  7  8  9  10
"I have a c-pac machine for 3 years"

O:  T:    P:    R:    BP:    WEIGHT:
Consulted c̄ Dr. Duong - Pt. c-pap machine does not meet
criteria for low bunk chrono. Pt has access to
electrical outlet.                    DEC 28 2016

A:

P:    By

☐ See Nursing Encounter Form

Consulted c̄ yard sgt. According to custody records
the electrical outlet is located in the middle of the wall
E: half way up on the opposite side of the cell. The electrical
cord provided is of
insufficient length to provide the
necessary power to operate c-pap machine

APPOINTMENT    EMERGENCY ☐    ☐ URGENT    ☑ ROUTINE
SCHEDULED AS:    (IMMEDIATELY)    (WITHIN 24 HOURS)    12-9    (WITHIN 14 CALENDAR DAYS)

REFERRED TO PCP:    DATE OF APPOINTMENT:

COMPLETED BY  Cabrera RN 314    NAME OF INSTITUTION  CTM

PRINT / STAMP NAME  Cabrera RN 314    SIGNATURE / TITLE  Cabrera RN 314    DATE/TIME COMPLETED  12/27/16  1200

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

Confidential Saved 2018-01-02 19:35:53Z

EXHIBIT 4

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print):   (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| Tingirides Chris A. | | V-76154 | |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM_____ TO_____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| C-1-223L | Painter | | Housing Assignment |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW: I have a life threatening illness Sleep Apnea which requires me to use a C-PAP device. This device must be lower than my sleeping position. This device heats water to 149° in order to humidify my air. I cannot safely operate this device in an upper bed assignment. In an upper bed assignment the machine can fall to the floor and be damaged, water can collect in the hose and drown me. I am attaching the owner's manuel pages that show these facts. I am attaching the CIM Durable medical Device Policy which states that custody staff is to inspec and insure safe and proper use of durable mediacl devices. I cannot be held liable for using this device in an unsafe manner and in direct violation of the manufactureres instructions. My life is in danger if I am ordered to sleep on the upper bunk without my C-PAP device.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) ** NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **

☐ SENT THROUGH MAIL:  ADDRESSED TO:_____  DATE MAILED: 12/30/16

☒ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE)  YES  NO |
|---|---|---|---|
| D. YING | 12-30-16 | | |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: (CIRCLE ONE)  IN PERSON    BY US MAIL |
|---|---|---|

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

Only medical can authorize you to put you on the lower bunk. Advised to see medical.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

EXHIBIT 5

Distribution: Original - Return to Inmate/Parolee; Canary - Inmate/Parolee's 2nd Copy; Pink - Staff Members Copy; Goldenrod - Inmate/Parolee's 1st Copy.

5329034

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☐ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

NAME _Tingirides, Chris A._

CDC NUMBER _V-76154_

HOUSING _C-1-130Upper_

PATIENT SIGNATURE

DATE _06-28-17_

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) _On 06-28-17 my C-PAP breathing assistance device fell off of the top locker and the access door broke off. Also the on off switch is bent. The machine is damaged. Please respond ASAP as this machine is used to treat a life threatening illness Sleep Apnea. I continue to use this machine in an unsafe manner as assigned and instructed._

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☒ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

Date / Time Received: _0932 06/20/17_ Received by: STRINGER, S. RN #334

Date / Time Reviewed by RN: Reviewed by: STRINGER, S. RN #334

S: _"I have already spoke c the respiratory therapist and he already ordered me a new one. I just put in a 7362 so that it is documented what happened to my machine"_

Pain Scale 1 2 3 4 5 6 7 8 9 10

O: T:    P:    R:    BP:    WEIGHT

_Resolved_    NCF 12.4

A: _Altered health status R/T broken CPAP 2° to sleep apnea. P: await for new CPAP machine._

☐ See Nursing Encounter Form

E: _Pt able to verbalize understanding of tx and care in his own words. Pt's filed for sleep apnea_

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☒ |
|---|---|---|---|

REFERRED TO PCP:    DATE OF APPOINTMENT:

COMPLETED BY STRINGER, S. RN #334    By    NAME OF INSTITUTION _CIM_

PRINT / STAMP NAME STRINGER, S. RN #334

SIGNATURE / TITLE _c334_

DATE/TIME COMPLETED _06/30/17 0955am_

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

Confidential Saved 2018-01-02T19:35:53Z

EXHIBIT 6

* Auth (Verified) *

ATTN: Respratory Therapy

5330597

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☒XX | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME Tingirides, Chris A. | CDC NUMBER V-76154 | HOUSING C-1-130U |
|---|---|---|

| PATIENT SIGNATURE | DATE 09-10-17 |
|---|---|

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had
The Problem)   Once again, my C-PAP machine fell off of the top locker
and ripped the hose. I need a new hose, my C-PAP does not work with
the hose ripped. This is causing me undue hardship. I need a new hose.
to be able to use my C-PAP dellice.

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON
BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: 9/11/17 0730 | Received by: |
|---|---|
| Date / Time Reviewed by RN: | Reviewed by: Diane Lovern #632 |

S:                                          Pain Scale:  1  2  3  4  5  6  7  8  9  10

O:    T:        P:        R:        BP:              WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |
| PRINT / STAMP NAME | SIGNATURE / TITLE | | DATE/TIME COMPLETED |

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

EXHIBIT 7

CIM - California Institution for Men

Patient:        **TINGIRIDES, CHRIS ALEXANDER**
DOB/Age/Sex:    10/25/1959 / 58 years    / Male        CDCR: V76154

---

| *7362 Health Care Services Request* |
|---|

Document Type:                              7362 - Nursing
Document Subject:
Service Date/Time:                          9/12/2017 10:30 PDT
Result Status:                              Auth (Verified)
Perform Information:                        Love,Remi RN (9/12/2017 10:31 PDT)
Sign Information:                           Love,Remi RN (9/12/2017 10:31 PDT)
Authentication Information:                 Love,Remi RN (9/12/2017 10:31 PDT)

I/P was seen today on RN line with report of multiple tears in CPAP hose due to machine falling off of top locker where the machine is placed at night in order to reach his top bunk.  Message sent to RT to schedule him for an appt to replace this part.  I did temporarily mend the hose with surgical tape.

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  5237852                        Print Date/Time:  1/2/2018 12:59 PST

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

EXHIBIT 7A

**\* Auth (Verified) \***

5750459

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|
| *A fee of $5.00 may be charged to your trust account for each health care visit.* |
| **If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.** |

| REQUEST FOR: | MEDICAL ☒ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME Tingirides, Chris A. | CDC NUMBER V-76154 | HOUSING C-1-130U |
|---|---|---|

| PATIENT SIGNATURE Cma ⬚⬚⬚ | DATE 09-15-17 |
|---|---|

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)  My C-PAP machine fell off of the top locker due to my tossing over and pulling it off of the locker. The hose is ripped at the fitting the tape you used to patch it did not work. I cannot sleep without this machine. My AHI have gone up to 9.6 from 5.2 My periodiac events have gone from 0 to 13%. This is putting my health at risk. I need a new hose.

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

| PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT |
|---|
| ☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.) |

| PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE | | |
|---|---|---|
| Date / Time Received: 09/18/7 07JU | Received by: GUTIERREZ, D. RN # 335 | |
| Date / Time Reviewed by RN: | Reviewed by: GUTIERREZ, D. RN # 335 | |
| S: | Pain Scale: 1  2  3  4  5  6  7  8  9  10 | |

O:    T:    P:    R:    BP:         WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |
| PRINT / STAMP NAME | SIGNATURE / TITLE | | DATE/TIME COMPLETED |

CDC 7362 (Rev. 03/04)   Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

EXHIBIT 8

* Auth (Verified) *

5339172

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**    DEPARTMENT OF CORRECTIONS

**PART I: TO BE COMPLETED BY THE PATIENT**

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☒ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

NAME *Tingirides, Chris A.*    CDC NUMBER *V-78154*    HOUSING *C-1-130U*

PATIENT SIGNATURE    DATE *10-08-17*

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) *Now that the wheather has cooled dwon at night I am getting water running downhill in the hose into my mouth and face. It is unsafe and waking me up, thus interferring with my sleep. I cannot use the humidifier with the machine on the top bunk above my sleeping position Please advise how to remedy this.*

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

**PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT**

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

**PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE**

| Date / Time Received: | | Received by: | |
|---|---|---|---|
| Date / Time Reviewed by RN: | | Reviewed by: | |

S:    Pain Scale:  1  2  3  4  5  6  7  8  9  10

O:    T:    P:    R:    BP:    WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |
| PRINT / STAMP NAME | SIGNATURE / TITLE | | DATE/TIME COMPLETED |

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

*EXHIBIT 9*

Patient Name: Tinginides,13H06-02098-JFW-MAA     Document 1     Filed 10/02/18     Page 33 of 34   Page ID
Date of Birth: 10/25/1959 00:00 PST                                              #:33

MRN: V76154
FIN: 1000000612002751V76154

\* Auth (Verified) \*

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

5339165
DEPARTMENT OF CORRECTIONS

**PART I: TO BE COMPLETED BY THE PATIENT**

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☒ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| Tinginides, Chris A. | V-76154 | C-4-207U |

| PATIENT SIGNATURE | DATE |
|---|---|
| | 10-31-17 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) _Due to my being placed on the upper bunk which requires me to place my C-PAP on top of my locker above my sleeping position and now due to the weather cooling off I have been woken up numerous times during the night due to water condensing in the hose and running into my mouth and on my face. My pillow is getting wet and disturbing my sleep. Two weeks ago you said that you would get back to me and advise how to remedy this. I need to be able to safely use my C-PAP device. I cannot use my humidifier, please help._

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

**PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT**

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

**PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE**

| Date / Time Received: | 11/1/7 | Received by: | |
|---|---|---|---|
| Date / Time Reviewed by RN: | 0730 | Reviewed by: | |

| S: | | Pain Scale: 1   2   3   4   5   6   7   8   9   10 |
|---|---|---|

O:     T:        P:        R:        BP:        WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |

| PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME COMPLETED |
|---|---|---|

CDC 7362 (Rev. 03/04)   Original - Unit Health Record     Yellow - Inmate (if copayment applicable)     Pink - Inmate Trust Office (if copayment applicable)     Gold - Inmate

EXHIBIT 10

Patient Name: TINGIRIDES, CHRIS ALEXANDER
Date of Birth: 10/25/1959 00:00 PST

* Auth (Verified) *

5339168

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☐ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME Tingirides, Chris A. | CDC NUMBER V-76154 | HOUSING C-4-207U |
|---|---|---|

PATIENT SIGNATURE

DATE 12-04-17

REASON YOU ARE REQUESTING HEALTH CARE SERVICES (Describe Your Health Problem And How Long You Have Had The Problem) Due to the cold weather and my being on the top bunk with my C-PAP on top of the locker, I cannot use my humidifier without water running downhill into my mouth and face. This is waking me up and interferring with my sleep. I am now having to take naps due to being tired, you said you would get back to me with instructions, please help me, I do not know what to do.

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: | 12/4/17   0700 | Received by: |
|---|---|---|
| Date / Time Reviewed by RN: | 12/4/17   0700 | Reviewed by: |

S:                                         Pain Scale:  1  2  3  4  5  6  7  8  9  10

O:    T:        P:        R:        BP:              WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |
| PRINT / STAMP NAME | SIGNATURE / TITLE | | DATE/TIME COMPLETED |

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

EXHIBIT 11