FILED
CLERK, U.S. DISTRICT COURT
12/12/2018
CENTRAL DISTRICT OF CALIFORNIA
BY: CW DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS A. TINGIRIDES,<br><br>    Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, *et al.*<br><br>    Defendants. | Case No. 5:18-cv-02098-AG (MAA)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

## I. INTRODUCTION

On October 2, 2018, Plaintiff Chris A. Tingirides ("Plaintiff"), currently incarcerated at the California Institution for Men in Chino, San Bernardino County, California (the "Prison"), proceeding *pro se* and *in forma pauperis*, filed a civil Complaint alleging violations of his civil rights pursuant to Title II of the Americans with Disabilities Act ("Title II" or "ADA") and 42 U.S.C. § 1983 ("Section 1983"). ("Complaint," ECF No. 1.) The Court has screened the Complaint as prescribed by 28 U.S.C. § 1915A ("Section 1915A") and 28 U.S.C. § 1915(e)(2)(B) ("Section 1915(e)(2)(B)"). For the reasons stated below, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS AND CLAIMS FOR RELIEF

Plaintiff was diagnosed with obstructive sleep apnea in 2012 and has since been required to use a Constant Positive Air Pressure ("C-PAP") breathing assistance therapy device. (Compl. 7[1].) Allegedly due to safety and liability concerns, and purportedly in light of manufacturer warnings regarding the use of the C-PAP device, Plaintiff originally was assigned to a lower bunk, which resulted in successful treatment of his condition for three years. (*Id.* at 9.)

In January 2016, Plaintiff was transferred to Facility C and assigned to an upper bunk. (*Id.* at 11.) Herein began a series of reassignments of Plaintiff's sleeping arrangements between upper and lower bunks caused by prison authorities whom Plaintiff does not identify by name. (*Id.* at 11-13.) Plaintiff's concern about sleeping on the upper bunk was that there was no safe way to secure his C-PAP device below his lower bunk and that placing it above his sleeping level would cause the water to accumulate in the hose and run into the airway causing him to either drown or pull off the mask. (*Id.* at 20.) Plaintiff also was concerned that pulling on the device could cause it to fall onto his lower bunkmate and burn him with 149-degree water. (*Id.*)

On numerous occasions Plaintiff was told, again by unidentified persons, that he needed a "lower bunk chrono" in order to be assigned to a lower bunk. (*Id.* at 11-13.) His quest for a lower bunk chrono was met with internal finger-pointing: he was told by the Medical Staff that only the Custody Staff could issue the chrono and by the Custody Staff that only the Medical Staff could issue the chrono. (*Id.*) In response to his inmate appeal related to the lower bunk chrono, Plaintiff was told he was entitled to nothing more than the ability to "plug the machine in"

---

[1] The Complaint contains a series of interrupted paginations. Accordingly, the Court cites the page numbers generated by ECF.

2

(presumably into a working electrical outlet). (*Id.* at 11.) In addition, Plaintiff was told by an unidentified Duty Sargent that a "C-PAP machine is not a consideration for lower bunk." (*Id.* at 12.) To address Plaintiff's safety concerns, Defendant Dr. Duong informed him that the Custody Staff would provide him with a longer hose or a table so that he could place his machine at a lower level. (*Id.*) Plaintiff contends that Defendant Duong either knew or should have known that this was inaccurate because "Custody does not issue these items." (*Id.*) Indeed, Plaintiff never received a different hose and, in any event, was told by an unidentified respiratory therapist that the machine's calibration required the current length, rather than a longer, hose. (*Id.* at 13.)

Ultimately, in June 2017, Plaintiff was assigned permanently to an upper bunk. (*Id.* at 12.) While at the upper bunk, Plaintiff kept his C-PAP machine on top of the locker next to his bunk. (*Id.*) In his continued quest for a lower bunk, Plaintiff met with a person he identifies only as "Defendant," who told him that "using a C-PAP machine does not qualify for a lower bunk" and that Plaintiff was being "accommodated with a long hose[] so that he [could] put the C-PAP machine at a lower level." (*Id.*)

On June 14, 2017, Plaintiff's C-PAP machine fell off the locker to the floor during a security check and was damaged. (*Id.* at 12.) Two weeks later, his C-PAP machine again fell off the locker, this time breaking the access door off the device and bending the on/off switch. (*Id.*) Again, in September 2017, the C-PAP machine fell off the locker, this time ripping the hose and rendering it inoperative. (*Id.* at 13.) Two days later, an unidentified member of the Nursing Staff taped the hose together. (*Id.*) However, the tape no longer held three days thereafter, causing Plaintiff's breathing to be severely interrupted and his oxygen level substantially decreased. (*Id.* at 13-14.) Three days later, Plaintiff was issued a new hose and mask, again by an unidentified person. (*Id.* at 14.)

On October 8, 2017, Plaintiff submitted a medical request form advising that the cooler weather caused condensation in the hose, which in turn ran into his face ("rain out") and interfered with his sleep because he choked and was forced to drain the hose. (*Id.*) Plaintiff was seen by an unidentified person in the Nursing Staff on October 17, 2017 and was told that a Senior R.N. would contact him. (*Id.*) On October 31, 2017, Plaintiff filed another medical request form, reiterating his concerns and adding that his pillow was now getting wet and that no one had gotten back to him since his October 17, 2017 meeting. (*Id.* at 14-15.) Two days later, on November 2, 2017, Plaintiff was seen again by an unidentified person in the Nursing Staff who informed him that the lower bunks were for people who could not get up onto an upper bunk[2], not for C-PAP users. (*Id.* at 15.) On December 4, 2017, Plaintiff submitted another medical request and, when seen by an unidentified person in the Nursing Staff, reported that he was taking daytime naps due to disturbed sleep as a result of the rain out. (*Id.*) On December 22, 2017, Plaintiff complained again about the loss of sleep caused by the rain out and was told by Respiratory Therapist Navarro that he needed to position his C-PAP machine lower than his sleeping position and that he should be placed on a lower bunk. (*Id.*)

Based on the foregoing allegations, Plaintiff brings claims under Title II of the ADA and the Eighth Amendment of the United States Constitution, claiming that Defendants California Department of Corrections and Rehabilitation ("CDCR"), Warden Dean Borders, and Dr. Han Duong (each a "Defendant," and collectively, "Defendants") violated his constitutional rights by failing to provide adequate medical care. (*Id.* at 17.) He sues each of the three Defendants in their individual capacities and seeks (1) adequate medical care so that he may enjoy the

---

[2] The Complaint alleges: "Nursing staff told plaintiff that lower bunks were for people that could not get onto a *lower* bunk, not for C-PAP users." (Compl. 15) (emphasis added). The Court believes the Court-italicized word is a typographical error and interprets this allegation as stated above.

4

benefits of his C-PAP device, (2) compensatory damages in the amount of $20,000, and (3) punitive damages in the amount of $30,000. (*Id.* at 3, 17.)

### III. STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (Section 1915A), or in which a plaintiff proceeds *in forma pauperis* (Section 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to Section 1915(e)(2)(B)(ii)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to Section 1915A). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (*quoting Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013). In reviewing a motion to dismiss, the court will accept factual allegations as true and view them in the light most favorable to the plaintiff. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017)

(*citing N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are insufficient . . . ." *Park*, 851 F.3d at 918 (first ellipsis in original) (*quoting Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a plaintiff is *pro se*, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt. *See Wilhelm*, 680 F.3d at 1121 (9th Cir. 2012). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (*quoting Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a *pro se* plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212.

//
//
//

## IV. DISCUSSION

### A. The Complaint Fails To State A Claim Under Title II Of The ADA Against All Defendants.

Plaintiff brings a claim under the ADA against the three Defendants in their individual capacities and seeks both damages and injunctive relief in the form of adequate medical care. (Compl. 17.) The claim is improper for the reasons discussed below and is dismissed with leave to amend.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. *See* 42 U.S.C. § 12132; *Weinrich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.), *cert. denied*, 522 U.S. 971 (1997).

"[Title II] of the ADA only applies to public entities," not individuals. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). The ADA defines public entities as "any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1); *see also Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014) ("Title II is the portion of the ADA that applies to state and local governments."). Public entities include "every possible agency of state or local government," including state prisons. *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001); *see also Pa. Dep't. of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998). As they are not public entities, state actors in their individual capacities cannot be sued under the ADA. *See Vinson v. Thomas*, 288 F.3d 1145, 1155-56 (9th Cir. 2002).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or

7

discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1021 (9th Cir.2010); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir.2004).

To recover monetary damages under Title II, a plaintiff must prove intentional discrimination, which is determined by the deliberate indifference standard. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). The test for deliberate indifference in this context has two prongs: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Id.* at 1139. In a reasonable accommodation case (such as this one), the first prong is satisfied if a plaintiff alerts the public entity for his need for accommodation, or where the need or accommodation is obvious or required by statute or regulation. *Id.* To meet the second prong, a "failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 1140 ("[D]eliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course."). "Under the second element, a public entity does not act by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) (quotations omitted).

Plaintiff's ADA claim is defective for several distinct reasons. First, the ADA claims against Defendants Warden Borders and Dr. Duong in their individual capacities are improper and must be dismissed. *See Vinson*, 288 F.3d at 1155-56 ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA . . . .").

Second, the ADA claim against Defendant CDCR is not sufficiently pled. Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." *Simmons*, 609 F.3d at

8

1022 (*citing Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")). In this case, the alleged wrongful act – not assigning Plaintiff to a lower-bunk – involves a purported inadequate response to Plaintiff's medical needs. No discriminatory act based on Plaintiff's disability is alleged. There are no allegations that Plaintiff was excluded from any program or service, or that the institution had a policy to deny accommodation or otherwise discriminate against disabled prisoners. Because inadequate treatment of disability is insufficient to sustain a claim under Title II, Plaintiff's claim is insufficient to entitle him to relief from Defendant CDCR.

Third, the Complaint is devoid of factual allegations that would support an inference of intentional discrimination on the basis of Plaintiff's disability. *See Duvall*, 260 F.3d 1124 at 1138-40. To the contrary, as stated above, the crux of Plaintiff's complaint is inadequate medical care. There are no facts to suggest that any Defendant or any of the other actors named and unnamed throughout the Complaint, was motivated by discriminatory *animus* based on Plaintiff's disability. *See Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (concluding that challenged act did not deny benefits "based on disability").

For these reasons, the ADA claims against Defendants Warden Borders and Dr. Duong are improper, and the ADA claim against Defendant CDCR is pled insufficiently.

### B. The Complaint Fails To State An Eighth Amendment Claim Against All Defendants.

Plaintiff brings a claim pursuant to the Eighth Amendment against the three Defendants in their individual capacities and seeks both damages and injunctive

//

relief in the form of adequate medical care. (Compl. 17.) The claim is improper for the reasons discussed below and is dismissed with leave to amend.

### 1.   The Eleventh Amendment Bars Plaintiff's Eighth Amendment Claim Against Defendant CDCR.

States, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-66 (1989). To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress's intent must be "unequivocally expressed." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of California's Eleventh Amendment immunity).

Accordingly, to the extent that Plaintiff is purporting to state any claim against state entity Defendant CDCR (Compl. 3, 7, 17), this Defendant is immune from Plaintiff's federal civil rights claims. *See Pennhurst*, 465 U.S. at 100 ("This jurisdictional bar applies regardless of the nature of the relief sought.").

//
//
//
//

## 2. The Complaint Fails To State An Eighth Amendment Claim Against Defendants Warden Borders And Dr. Duong, Sued In Their Individual Capacities.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless it satisfies both the objective and subjective components of a two-part test: (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (*quoting Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

The subjective "deliberate indifference" prong is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). However, the defendant "must purposefully ignore or fail to respond to the plaintiff's pain or possible medical need for deliberate indifference to be established." *See id.* at 1060. Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice (*see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)), nor a mere delay in medical care (without more) (*Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1984)), nor a difference of opinion over proper medical treatment (*Sanchez v. Vild*,

891 F.2d 240, 242 (9th Cir. 1989)), is sufficient to constitute an Eighth Amendment violation. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

With respect to Defendant Warden Borders, the Eighth Amendment claim is insufficient for three reasons: <u>First</u>, it contains no express allegation that he personally was involved in any of the incidents of which Plaintiff complains.

<u>Second</u>, it contains no allegations to support supervisory liability against Defendant Warden Borders. Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of *respondeat superior* or vicarious liability in the absence of a state law imposing such liability. *See, e.g., Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991). A supervisory official may be liable under Section 1983 only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr*, 652 F.3d at 1207. "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207-08). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208). Specifically, supervisory liability may be alleged based on acquiescence with respect to a deficient policy that is the "moving force" behind a constitutional violation. *See Starr*, 652 F.3d at

12

1208; *see also Hansen*, 885 F.2d at 646 ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.") (internal quotations omitted). Here, Plaintiff makes no such allegations.

Third, to the extent that Plaintiff's Section 1983 claim against Defendant Warden Borders may be based on his role in the denial of Plaintiff's administrative appeals, Plaintiff's allegations are insufficient because the Ninth Circuit has held that a prisoner has no constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), *cert. denied*, 541 U.S. 1063 (2004); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also, e.g., George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances could not be held liable under Section 1983), *cert. denied*, 530 U.S. 1264 (2000); *Wright v. Shapirshteyn*, No. CV-1-06-0927-MHM, 2009 WL 361951, at *3 (E.D. Cal. Feb. 12, 2009) ( "[W]here a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983."); *Velasquez v. Barrios*, No. 07cv1130-LAB (CAB), 2008 WL 4078766, at *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action.").

The Eighth Amendment claim against Defendant Dr. Duong also is insufficient. The Complaint mentions only that in January 2017, Dr. Duong

13

incorrectly informed Plaintiff that "custody would supply him with a longer hose or a table to put the device on" and that "Defendant Duong knew, or should have known that Custody does not issue these items." (Compl. 12.) However, these allegations do not rise to the level of deliberate indifference to Plaintiff's serious medical need that is required to state an Eighth Amendment claim. To begin with, the conduct complained of is not related to the quality of medical care provided by Dr. Duong, but rather to a statement about the availability of certain parts for Plaintiff's C-PAP machine over which Dr. Duong had no control. Moreover, the Complaint fails to allege, other than in a conclusory manner that the Court is not required to accept, any facts related to Dr. Duong's deliberate indifference.

Therefore, the Eighth Amendment claim against Defendant CDCR is improper, and the Complaint fails to state a cognizable claim for Eighth Amendment inadequate medical care against Defendants Warden Borders and Dr. Duong.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint **WITH LEAVE TO AMEND**.

If Plaintiff still wishes to pursue this action, he shall file a First Amended Complaint within **thirty (30) days** after the date of this Order. In any amended complaint, the Plaintiff shall cure the defects described above. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint. The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to

14

Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action, or portions thereof, be dismissed with prejudice for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

If Plaintiff no longer wishes to pursue this action in its entirety or with respect to particular Defendants or claims, he voluntarily may dismiss all or any part of this action by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). **A form Notice of Dismissal is attached for Plaintiff's convenience.**

Plaintiff is advised that this Court's determination herein that certain allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of such claims. Accordingly, although the undersigned Magistrate Judge believes that Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C.

§ 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: December 12, 2018

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments:
Form Civil Rights Complaint
Form Notice of Dismissal